# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2223 | **DATE** | 6/27/2001 |
| **CASE TITLE** | Nathan Dardick vs. Martin E. Zimmerman, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' Rule 12(b)(6) motion is denied, and all defendants are ordered to file their answers to the Complaint in this Court's chambers on or before July 6, 2001.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 28 2001 | 19 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | 01 JUN 28 AM 8: 08 | 6/28/2001 date mailed notice |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATHAN H. DARDICK, )
)
        Plaintiff, )
)
v. ) No. 01 C 2223
)
MARTIN E. ZIMMERMAN, et al., )
)
        Defendants. )

**DOCKETED**
**JUN 2 8 2001**

MEMORANDUM OPINION AND ORDER

This action, in which Nathan Dardick ("Dardick") charges seven individual defendants with securities fraud in connection with the sale of common stock and preferred stock (the latter via private placement) of publicly traded corporation LINC Capital, Inc. ("LINC"), has been met by defendants' Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss. According to defendants, the tighter constraints that have been imposed on such private actions by the 1995 Private Securities Litigation Reform Act (the "Act," 15 U.S.C. §78u-4[1]) did away with what has become known as the Group Pleading Doctrine (as defendants are careful to add, they believe that no such doctrine ever existed even before the 1995 enactment). Dardick's counsel has responded with a vigorous "not so." This memorandum opinion and order addresses the viability of Dardick's Complaint in light of the positions staked out by the litigants' memoranda.

---

[1] Any citations to that statute in this opinion will take the simple form "Act Subsection --," omitting the entire portion of the formal citation set out in the text.

There is always a degree of peril in adopting such shorthand expressions as "Group Pleading Doctrine," for the tyranny of labels can often deflect the required legal analysis from its proper course--in this instance, from an appropriate examination of the universal proposition that all individuals' legal liability is indeed individual, based on a defendant's own conduct (or, where applicable, on respondeat superior principles). That, coupled with the relevant pleading standard, forms the perspective that this Court will adopt here, rather than speaking in the generalities suggested by the term "group pleading."

Indeed, the adoption of such a perspective is particularly appropriate in view of the schism that has developed among district courts that have chosen to speak of the issue in the formulaic "group pleading" style. Perhaps because of the relative recency of the 1995 legislation, but probably more because matters of pleading sufficiency are almost always resolved at the District Court level and do not find their way into Courts of Appeals' decisions, that schism (amply demonstrated by the multiple citations offered up by each side) has not generated any opinion from a source that makes precedent--as District Courts do not. In this instance the District Courts' competing views are exemplified by Dardick's reliance on an opinion by this Court's colleague Honorable

Suzanne Conlon (<u>Danis v. USN Communications, Inc.</u>, 73 F.Supp.2d 923, 936-39 (N.D. Ill. 1999)) and by defendants' counterreliance on the opinion of this Court's colleague Honorable Ruben Castillo in <u>Chu v. Sabratek Corp.</u>, 100 F.Supp.2d 827, 835-37 (N.D. Ill. 2000)).

Whatever side of that disagreement might seem more persuasive as an abstract matter, there is of course no question that it is not fatal for any complaint to collectivize "defendants" in certain respects--for example, in describing the duties of disclosure that defendants here shared with their principal LINC (see, e.g., Complaint ¶¶2 through 4). And as for the individual conduct of the named defendants here that could be actionable under Securities Exchange Act §§10(b) and 20(a)(15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5:

1. Complaint ¶¶3 and 4 and 37-47 expressly refer to communications between Dardick and defendant Martin Zimmerman that would satisfy the most restrictive view.

2. Complaint ¶41 adverts to a conversation between Dardick and Allen Palles, during which the latter assertedly failed to disclose LINC's serious financial difficulties despite Dardick's direct question "whether LINC was in good financial condition." That too is beyond cavil.

As for the rest of the defendants, Dardick identifies no face-to-face communications with any of them (though it should be

3

remembered that the principal gravamen of Dardick's claims is defendants' <u>failure</u> to disclose assertedly material facts, rather than any affirmative misrepresentations). Instead Dardick relies on these allegations in Complaint Count I, which are in turn incorporated by reference into all other counts:

> 48. The Defendants, by virtue of their positions at the Company, had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff, or, in the alternative, the Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth and Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.
>
> 49. Although information showing that the Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Defendants' knowledge and control, as the senior officers and directors of the Company, the Defendants had knowledge of, or recklessly disregarded, the details of the Company's internal affairs.
>
> 50. The Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As the senior officers and directors of a publicly-held company, Defendants had a duty to disseminate timely, accurate, and truthful information with respect to the Company's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of LINC common stock was artificially inflated from at least August 9, 1999 through and including March 31, 2000. In ignorance of the adverse

facts concerning LINC's business and financial
condition which were concealed by Defendants, Plaintiff
purchased 58,500 shares of LINC common stock at
artificially inflated prices and relied upon the price
of the stock, the integrity of the market for the stock
and/or upon statements disseminated by Defendants, and
was damaged thereby.

One essential part of the 1995 legislation's tightening-up approach to private securities actions such as this one is its insertion of Act Subsection (b)(2):

> In any private action arising under this chapter in
> which the plaintiff may recover money damages only on
> proof that the defendant acted with a particular state
> of mind, the complaint shall, with respect to each act
> or omissions alleged to violate this chapter, state
> with particularity facts giving rise to a strong
> inference that the defendant acted with the required
> state of mind.

And in that respect, it is highly significant that what Dardick relies on is the failure of all defendants to have disclosed a deep and pervasive corporate illness--the existence of LINC's extraordinarily serious financial difficulties--rather than, for example, the assertedly flawed accounting practices that Judge Castillo addressed in Chu.[2] To the outsider looking in, it is surely strongly inferential that every officer or director of LINC either had the knowledge of such deep financial difficulties

---

[2] Thus Judge Castillo can scarcely be faulted for having required a showing, to conform to Act Subsection (b)(2), that individual defendants were in fact aware of the kind of specialized misinformation that would ordinarily be known to a limited segment of the corporate control group. That contrasts sharply with the kind of basic deterioration of LINC's corporate health that Dardick relies on as having been known but undisclosed here.

5

or, if not, that his failure to have such knowledge equated to reckless disregard. And nothing in the Act or in any claimed abolition of a "group pleading doctrine" renders such allegations insufficient as a matter of law.[3]

There is surely no mystery here as to what Dardick is claiming that defendants did (or perhaps more precisely, did not do). Whether each defendant did or did not in fact engage in the concealment that Dardick ascribes to all defendants is something that will emerge either in the course of the mandatory up-front disclosure now required by Rule 26(a) or through discovery or both. In the meantime, defendants' Rule 12(b)(6) motion is denied, and all defendants are ordered to file their answers to the Complaint in this Court's chambers on or before July 6,

---

[3] Indeed, one of the few amusing aspects of the counter-submissions here is that defendants' most recent filing--captioned "Certain Defendants' Joint Response to Plaintiff's Informational Memorandum Regarding Group Pleading Doctrine"--concludes its attempted distinction of what it labels "the laundry list of cases from other jurisdictions" that, it says, "lend little support to plaintiff here" (Joint Response 4) by saying this about the most recent District Court opinion on which Dardick's counsel relies in support of his position (id. 5, emphasis in original):

> In re Complete Management Inc. Securities Litig., 2001 WL 314631 (S.D. N.Y. March 30, 2001). Plaintiffs specifically alleged that each *individual defendants* were aware of the firm's real problems but concealed them. Id., at *9.

But that of course is equally true of Complaint ¶48 (fairly read) in this case--in that sense, it makes no difference whatever that the allegations there speak of "defendants" collectively, rather than naming them one by one.

6

2001.[4]

                        */s/ Milton I. Shadur*
                        Milton I. Shadur
                        Senior United States District Judge

Date: June 27, 2001

---

[4] This Court is of course aware of defendants' backstop position that in any event the outside director defendants, Stanley Green and Curtis Lane, should be released from this litigation to attend to their other affairs. But what has been said here applies at present with equal force to those two defendants--whether or not they may be able to extricate themselves from this action more readily at a future point must indeed remain for the future.

7